Ex parte CHOOEY DEE YING.

(District Court, N. D. California. April 3, 1911.)

No. 15118.

1. ALIENS (§ 32*)—CHINESE EXCLUSION ACTS—PROCEDURE ON APPLICATION FOR ADMISSION.

On the examination of a Chinese person as to his right to enter the United States, where the issue was as to whether the applicant was the minor son of a Chinese merchant, admittedly a native of this country, a physical comparison between the applicant and his alleged father was competent and material evidence; and, where such an examination was made by the acting commissioner, his findings thereon must be embodied in the record on an appeal from his decision to the Secretary of Commerce and Labor.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. § 32.*]

2. ALIENS (§ 32*)—CHINESE EXCLUSION ACTS—PROCEDURE ON APPLICATION FOR ADMISSION.

Under the regulations governing the admission of Chinese of February 1909, which require "the officer in charge" at a port to examine applicants for admission, and authorizing an appeal from his decision, there is but one tribunal competent to make such decision; and, where it is made by the commissioner, he does not act as an appellate tribunal, although the evidence may have been taken before some other officer, but as a trial court, and all evidence whether taken before him or others is properly a part of the record.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. § 32.*]

Application by Chooey Dee Ying for writ of habeas corpus. Writ granted.

D. M. Duffy and Hiram W. Johnson, Jr., both of San Francisco, Cal., for petitioner.

Earl H. Pier, Asst. U. S. Dist. Atty., of San Francisco, Cal., for the United States.

DIETRICH, District Judge. [1] This is an application for a writ of habeas corpus presented upon behalf of a Chinese boy, who, after a hearing held by the officers of the immigration service, was denied entrance at the port of San Francisco. The applicant claims a right to enter upon the ground that he is a minor son of one Chooey Ngin Chow, a Chinese merchant, born and residing in the United States. The status of Chooey Ngin Chow was not seriously controverted, but upon the question of the alleged relationship the findings of the acting commissioner of immigration were adverse to the applicant, and his order of exclusion was, upon appeal, afterwards affirmed by the honorable Secretary of Commerce and Labor. By the petition here it is represented that the applicant was not given a fair hearing in that: (1) The testimony of one of his witnesses was not taken; and (2) the acting commissioner did not transmit to the Secretary of Commerce and Labor all of the material evidence received. Issue having been

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

joined upon an order to show cause, the matter was referred to a special referee and examiner to take and report the evidence with his findings and conclusions upon the question whether or not the applicant had had a full and fair hearing, and it is now submitted upon exceptions taken by the government to the referee's report, wherein it is recommended that a writ issue as prayed for, upon the ground that all the material evidence was not transmitted to and considered by the Secretary of Commerce and Labor as required by the rule announced in Re Can Pon, 168 Fed. 479, 93 C. C. A. 635. My impression at the hearing was that the facts did not bring the case within the principle of this decision, but upon a more thorough analysis of the record I am constrained to concur in the referee's conclusion. It seems that at the hearing before the immigration department the applicant was represented by counsel, and that at some stage of the proceedings, the exact time being in doubt, through his counsel he requested of the chief law officer that a physical comparison be made of himself with his alleged father, for the purpose of observing resemblance in feature and manner. While the chief law officer, who testified at length upon behalf of the government, has no distinct recollection of the incident, he declines to deny that such request was made, and admits that such comparisons were not unusual. And I think it must be held to be an established fact in the case that upon the request of the applicant's counsel a physical comparison of the applicant and his alleged father was made in person by the chief law officer. It cannot be doubted that such comparison is competent and may disclose most convincing evidence of kinship, especially where the relationship sought to be established is that of father and son. 2 Wigmore on Evidence, §§ 1150–1154; In re Jessup, 81 Cal. 418, 21 Pac. 976, 22 Pac. 742, 1028, 6 L. R. A. 594; Gilmanton v. Ham, 38 N. H. 108, 113. In passing it should here be remarked that in the matter of these hearings the chief law officer virtually performs the duties of the commissioner of immigration. The evidence in this case was in fact considered by the law officer who actually prepared the findings and the order of exclusion to which the commissioner's name was signed as a matter of course. While, therefore, in form the decision is that of the commissioner, in fact it is that of the chief law officer. And in this respect the procedure followed seems to have been in accordance with and not an exception to the general rule. If I properly read the record, it is to be inferred therefrom that all parties, both in and out of the service, entertained the view that the hearing was under the direction of the chief law officer, and that, subject the right of appeal to the Secretary, his findings would in fact be conclusive. He expressly states that he was not bound by the reports of the inspectors, and that it was within his discretion to direct the taking of additional evidence. In considering the case his action may therefore be regarded as the action of the commissioner.

It is conceded that the record forwarded to the Secretary of Commerce and Labor, and upon which his decision was based, contained no finding upon or reference to the physical comparison. The request for such comparison was oral and informal, and was not accompanied or followed by any suggestion that the officer make or incorporate in

the record findings thereon; nor did any witness testify as to the results of such comparison.

If the practice prevailing in the immigration service were attended with the formality and regularity generally characterizing judicial procedure in courts of law, it might therefore very properly be held, as argued by counsel for the government, that the applicant himself is in a measure to blame for the failure of the record to disclose the fact of the question whether the camparison was made by an inspector referee the entire hearing in such a case is informal and radically different from ordinary judicial procedure. A very loose practice seems to prevail as to the time and manner of making such comparison and of bringing the results to the attention of the reviewing officer. The request for such comparison is sometimes presented in writing and sometimes made orally. The comparisons are often made by the inspector, and not infrequently made by the commissioner or one or more of his law officers. Sometimes findings thereon are incorporated in the record transmitted to the Secretary, and sometimes no reference at all thereto is contained in the record. No very satisfactory explanation is furnished for this diversity of practice. From one portion of the testimony given by the chief law officer it might be inferred that a distinction is made between cases where the request is in writing and cases where it is oral, but the reason for such distinction is not apparent. The result of the comparison, if actually made, is the important consideration, and it is quite immaterial whether the officers are moved by a formal written demand or by an informal oral request upon the part of the applicant. From another portion of the testimony it is to be inferred that in cases where the comparison is made by the commissioner or his law officer no reference is made to the fact in the record which goes to the Secretary of Commerce and Labor, whereas in cases where a comparison is made by the inspector the finding thereon is incorporated in the report. But why such a distinction? If the comparison is deemed to be evidence it would seem that the Secretary of Commerce and Labor ought to have the benefit of it, regardless of the question whether the comparison was made by an inspector or by one of his superiors. The probative force of the comparison is the primary consideration, and that should be the same regardless of the official station of the individual making it.

Upon the whole I am inclined to think that the applicant had the right to assume that the comparison would be deemed to be a part of the evidence in the case, and that the result thereof, together with the other evidence, would be brought to the attention of the Secretary upon appeal. The applicant was represented by counsel familiar with the practice in the department, and his testimony leaves no doubt that he was unaware of any distinction between cases where the comparison is made by an inspector and those made by the commissioner or his law officer.

[2] It is urged upon behalf of the government that the chief law officer was without authority to receive evidence in the first instance, and that therefore the comparison did not properly become a part of the record. This suggestion seems to be predicated upon the theory

that the commissioner's office performs functions only of an appellate tribunal, whereas, as I view the law and the departmental rules, its status is more nearly that of a trial court. By referring to the printed regulations (Edition of February, 1909) Governing the Admission of Chinese, I find that by rule 5, it is provided that:

"Rule 5. Immediately upon the arrival of Chinese persons at any port mentioned in rule 4, it shall be the duty of the officer in charge of the administration of the Chinese exclusion laws to have said Chinese person examined promptly, as by law provided, touching their right to admission; and to permit to land those proving such right."

Rule 6 provides that:

"Rule 6. The examination prescribed in rule 5 shall be separate and apart from the public, in the presence of government officials and such other witnesses only as the examining officer shall designate; and all witnesses presenting themselves on behalf of any Chinese applicant shall be fully heard. If upon the conclusion of the hearing the Chinese applicant is adjudged to be inadmissible, he shall be advised of his right to appeal by a notice written or printed in the Chinese language."

Rules 12 and 13 are as follows:

"Rule 12. Every Chinese person refused admission under the provisions of the exclusion laws by the decision of the officer in charge at the port of entry may make an appeal to the Secretary of Commerce and Labor by giving written notice thereof to the officer in charge within two days, exclusive of Sundays and legal holidays, after such decision is rendered.

"Rule 13. Notice of appeal provided for in rule 12, shall act as a stay upon the disposal of the Chinese person whose case is thereby affected until a final decision is rendered by the Secretary of Commerce and Labor; and, within five days after the excluding decision is rendered, unless further delay is required to investigate and report upon new evidence, the complete record of the case, together with such briefs, affidavits, and statements as are to be considered in connection therewith, shall be forwarded to the Secretary of Commerce and Labor by the officer in charge at the port of arrival, accompanied by his views thereon in writing. If, on appeal, evidence in addition to that brought out at the hearing is submitted, it shall be made the subject of prompt investigation by the officer in charge and be accompanied by his report."

I find in these regulations no support for the theory that the commissioner or his law officer is in any sense an appellate tribunal. It will be observed that by the terms of these rules the authority to hear and decide questions pertaining to the right of Chinese persons to enter the United States is conferred upon "the officer in charge of the administration of the Chinese exclusion laws" at the port where admission is sought. Such officer seems not to be designated by any distinctive title, and it may be that at the several ports, or under varying circumstances, officers of different titles are charged with these duties. In this respect a somewhat bewildering situation is presented by the record of the department in this case. Attached to the evidence taken at the original hearing is a report dated November 17, 1910, signed by A. G. Montgomery "Chinese Inspector" and addressed to "Chinese Inspector in Charge, Immigration Service, Angel Island, Cal."; another report, addressed in the same fashion, dated December 28, 1910, and signed by Chas. D. Mayer, "Chinese Inspector"; a paper headed Findings and Decree, dated January 4, 1911, signed "Luther C. Stew-

ard, Acting Commissioner"; a notice addressed to the Chinese Counsel, dated January 4, 1911, signed "H. Edsell, Acting Commissioner", a notice (the date of which is not clear) addressed to the applicant, and signed "Charles Mehan, Inspector in Charge Chinese Division." This notice is a printed form and advises the applicant that he has been refused admission by the decision of "the honorable Commissioner of Immigration." There is another notice of similar import printed in both the English and the Chinese language, dated January 4, 1911, and signed "Charles Mehan, Officer in Charge." The notice of appeal to the Secretary is upon a printed form, presumably approved by the department, and therein the order appealed from is designated as "the decision of the commissioner of immigration," and the letter transmitting the record on appeal is signed "Luther C. Steward, Acting Commissioner." While, as will be observed, there seems to be much confusion of official titles disclosed by this record, I assume that the "commissioner," who signed the findings and transmitted the record, was the "officer in charge" within the meaning of the general regulations above referred to. It is also clear, I think, that at the port of San Francisco there was but a single tribunal, the functions of which were essentially those of a trial court. The hearing before the commissioner was in contemplation of law an original hearing, and his decision was the first and only decision by the local officers. To be sure there may be other examining officers to take testimony and assemble the evidence, as there may be examiners or referees in this court. But in theory the hearing is before the "officer in charge," who alone is vested with authority to give a decision. In this view, while it is competent for the officer in charge to refer the taking of the testimony, in whole or in part, to other officers in the service, he is not bound to do so. He has the unquestionable right to require or consent that the hearing, either in part or as a whole, be had in his presence, and it would scarcely be suggested that the testimony of any witness does not necessarily constitute a part of the record to be transmitted to the Secretary, merely because such witness testified in the presence of the commissioner. Upon principle it is thought to be equally true that, other material evidence adduced before him, whether it be in the form of documents or the result of a physical comparison, as in this case, should be deemed to be a part of such record. The chief law officer, who, as has already been stated, acted for the commissioner in these matters, testified that he supposed these comparisons were requested by attorneys for claimants, for the purpose of influencing his opinion or affecting his judgment; but that is thought to be the very purpose of evidence. It is difficult to understand how the officer can, with propriety, consent to make such comparisons, knowing that thereby it is sought to affect his judgment, unless the result thereof is deemed to be in the record as a part of the applicant's case. It is true that the law officer testifies that he places little, if any, value upon such evidence, but admittedly comparisons are deemed to be of some importance, for when they are made by a subordinate examining officer, he is required to make a report thereon. And perhaps no stronger argument could be adduced in support of the applicant's contention than the assertion of the law of-

ficer that he holds such comparisons lightly, and usually makes them only to satisfy the attorneys. Others may not unreasonably entertain a different view, and it is entirely possible that the Secretary may hold the results of such comparison in higher esteem, and consequently in a close case the evidence thus furnished might control the decision.

Let the writ issue.